Andrews, J.
The county superintendents of the poor in the several counties of the State are authorized to bind out any child, under the age of eighteen years, who shall be sent to any county poor house, or whose support shall be a county charge, to be an apprentice, until such child, if a male, shall be twenty-one years of age. (2 Rev. St., 154, § 5.) The plaintiff, in 1854, being then of the age of nine years, was subject to the exercise of this authority by the county superintendents of the poor of Cortland county; and in that year, indentures purporting to have been executed by the three superintendents of the poor of that county, and by the defendant, were made, binding the plaintiff, as an apprentice, to the defendant until he should reach his majority. The plaintiff remained in the family of the defendant ■ and was maintained by him from the time the indentures were executed until. August, 1862, when, without the defendant’s knowledge or consent, he enlisted in the army. He was then seventeen years of age, and served as a soldier until July, 1865, when he returned to the house of the defendant. The plaintiff, as he alleges, sent to the defendant ■ the bounty money paid on his enlistment, and from time to time remitted to him portions of his wages, and on his discharge, in 1865, placed in his hands the additional sum of $175, of which $100 was paid the plaintiff for services, and seventy-five dollars for bounty money which had been retained by the government.
This action was brought to recover the money received by the defendant, on the ground that it was received as a deposit, and upon an agreement by the defendant to repay it on demand. The defendant denied the alleged agreement, and claimed that he was entitled to demand and receive from the plaintiff the bounty money and wages, by reason of the relation of master and apprentice, created by the indentures, and the fact that the money paid to the plaintiff was for his *79 personal services, to which, by the indentures, the defendant was entitled, and of which he had been deprived by the wrongful act of the plaintiff in abandoning his service without his consent. To establish the relation of master and apprentice, the indentures were offered in evidence by the defendant. Proof was given of the circumstances under which the signatures of the county superintendents thereto had been made. Luce, one of the superintendents, had signed printed forms of indentures and delivered them to the other superintendents, to be filled out when there was occasion to use them. The indentures in question were signed by him in this manner; he was not present when they were signed by his colleagues, and was not consulted in respect to binding out the plaintiff, nor was he notified of any meeting on the subject. There was evidence tending to show that the other superintendents consulted together before executing the indentures, and signed them on such consultation. The court, upon the objection of the plaintiff’s counsel, refused to admit the indentures in evidence, on the ground that they were not in law executed by Luce, and that the authority given to the superintendents of the poor to bind out minors as apprentices, could only be exercised by a majority of the superintendents, at a meeting of which all had notice. It is the rule of the common law that when a power to act in a matter of public interest, is conferred by statute upon several persons, all must meet and confer before the power can be exercised; and that the act of the majority is not a valid execution of the power unless it is performed upon the joint meeting and deliberation of all to whom it is intrusted. (Ex parte Rogers, 7 Cow., 526; Dowling v. Rugar, 21 "Wend., 178.) This rule is incorporated into the Revised Statutes, which declare that “whenever any power, authority or duty is confided by law to three or more persons, and whenever three or more persons or officers are authorized or required by law to perform any act, such act may be done, and such power, authority or duty may be exercised and performed by a majority of such persons or officers, upon a meeting of all the persons or offi *80 cers so intrusted or empowered unless special provision is otherwise made.” (2 R S., 555, § 27.) If the validity of the indentures in question is to be determined by the rule of the common law regulating the mode of executing powers confided to public officers, or by this statute they cannot be sustained. There was no joint meeting or deliberation of the three superintendents. The act of Luce in signing the blank indentures had no relation to the plaintiff. His consent that the other superintendents might use them thereafter in executing indentures was a nullity. He was himself a public agent and he could not authorize another to exercise in his behalf a discretion and judgment which was a personal trust confided to him. The question then arises, whether the power to bind by indentures of apprenticeship can be executed by a majority of the superintendents without a meeting of all.
By the Revised Statutes it is made the duty of the boards of supervisors within the several counties of the State, except the county of Hew York, to appoint not less than three nor more than five superintendents of the poor, for their respective counties; and in the section containing this provision it is declared that “ a majority of the persons so appointed shall be at all times competent to transact business and to execute any powers vested in the board of superintendents.” (1 R. S., 617, § 15.) The language of this provision is broad, and was intended, we think, to authorize the majority of the superintendents to act, irrespective of and without consultation with, the minority. If it was intended simply to authorize the majority to act when all had met or consulted, the provision was unnecessary, for the general statute conferred this power, and independently of the statute it existed by force of the common law. This enactment is peculiar and applies only to this class of officers; and the variety of duties imposed. upon them; the necessity for prompt action in many cases, and the inconvenience of calling together persons widely separated as the superintendents often are, may have been deemed by the legislature sufficient reason for the exceptional character of the legislation. *81 The statute declares that a majority of the superintendents shall be at all times competent to transact business and execute the powers conferred; and the courts cannot annex a qualification not contained in the law. We are, therefore, of the opinion that the court erred in rejecting the indentures. For this error, the judgment must be reversed, unless, conceding the validity of the indentures, the plaintiff is still entitled to recover.
The majority of the court are of opinion that both the wages and the bounty money, when received by the plaintiff, belonged to him to the exclusion of any claim of the defendant by reason of the indentures. The master is, in general, entitled to the services of his apprentice, and if he enters the service of another without the master’s consent, the master may recover the value of the services from the employer. (2 Kent’s Com., 265; James v. McEvers, 6 J. R., 274; Lightly v. Clouston, 1 Taunt., 112.) If the apprentice had received payment for services rendered under such circumstances, it would seem to be consistent with legal analogies, that the money in the possession of the apprentice might be claimed by the master. He could elect to affirm the contract under which the money was paid, and treat it as having been received by the apprentice for him.
But in the case of an apprentice who has enlisted in the army, the master cannot intercept the wages due to the apprentice. The government recognizes the employment as a personal contract with the soldier. The wages earned are paid to him, and if he dies before payment, his administrator is the only person entitled to receive them. (Caughey v. Smith, 47 N. Y., 245.; United States v. Bainbridge, 1 Mason, 84.) The government has the right to require the personal services of its citizens for the public defence. Minors and adults are alike subject to this supreme authority. The government may dissolve the relation of master and apprentice, existing by force of municipal regulations, and the obligation of service resulting from indentures executed under, or sanctioned by the local law. If the relation is dissolved by the *82 action of the government in calling the apprentice into its service in time of war, it is reasonable that his right to the wages earned in this perilous service should be recognized; and if the obligation of service on the part of the apprentice under the indentures is discharged, the correlative duty of protection and maintenance on the part of the master would be discharged also. It has long been settled that bounty or prize money paid to an apprentice cannot be claimed by the master. (Carsan v. Watts, 3 Doug., 350.) And the majority of the court are of opinion that the same rule should be applied in respect to money received by him as wages for services in the army of the country of which he is subject, irrespective of the fact whether the master consented to the enlistment, and although the enlistment was the voluntary act of the apprentice and was not compelled by the government. In this view the judgment should be affirmed, notwithstanding the error of the judge in rejecting the indentures. If the money paid to the defendant was the money of the plaintiff, the former must be deemed to have received it as bailee for the plaintiff, who was a minor when it was placed in the defendant’s hands; and the jury have found against the defendant upon his claim that there was a settlement of the cause of action between the parlies after the plaintiff became of age.
We concur in the opinion expressed by the judge, on the motion for a new trial, that the proof of the settlement alleged, was not of that conclusive character, that a verdict for the plaintiff upon that issue can be set aside, as against evidence.
The judgment should be affirmed, with costs.
All concur.
Judgment affirmed.